No. 13,050.

PEOPLE EX REL. ATTORNEY GENERAL v. THIERRY.
(17 P. [2d] 543)

Decided December 12, 1932.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. OLIVER DEAN, Assistant, Mr. RALPH L. CARR, for petitioner.

Mr. L. D. MOWRY, for respondent.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

JOSEPH Thierry was charged with contempt in a disciplinary proceeding against a Colorado attorney instituted by the attorney general on order of this court. Neither this disciplinary action nor this contempt charge was caused to be instituted by the interposition or action of our grievance committee. After issues joined, the cause was referred to a referee, Hon. Stanley T. Wallbank, who filed his report September 22, 1932, finding respondent guilty of contempt of this court, whereupon respondent was allowed twenty days within which to file exceptions thereto. No exceptions were filed within that time.

The referee's report discloses that in February, 1930, Thierry made an unsworn statement charging a Denver lawyer with gross unprofessional conduct for the purpose of being, and thereafter to be, used in disbarment proceedings against him.

In January, 1930, disbarment proceedings (No. 12,543) were instituted, based, inter alia, upon said statement and therein before Mr. Justice Burke, to whom the case had been referred, respondent swore in effect that the statement was untrue.

We approve the referee's report which sets forth in detail the charge and testimony herein and that given before Mr. Justice Burke in the disbarment proceedings. We find the respondent, Joseph Thierry, guilty of criminal contempt of this court; decree that he be fined therefor the sum of $100, and that he be incarcerated forthwith in the jail of the City and County of Denver and there held for a period of one month or until said fine has been paid or until further order of this court.

MR. JUSTICE ALTER concurs in the conclusion but believes that the penalty is inadequate.

MR. JUSTICE BUTLER specially concurs.

MR. JUSTICE HILLIARD dissents.

MR. JUSTICE BURKE not participating.

Mr. Justice Butler, concurring.

On January 17, 1930, there was filed with this court a petition to disbar J. W. Kelley for unprofessional conduct in connection with several transactions. A few months later, and while that disbarment proceeding was pending, Joseph Thierry made to certain lawyers, one of whom had been requested by the grievance committee of the Colorado Bar Association to interview him, an oral statement charging Kelley with unprofessional conduct in connection with another transaction. The grievance committee is an agency of this court for the purpose of investigating charges of unprofessional conduct against members of the bar (Supreme Court rules 84a-84j), and at that time was engaged in investigating the charges against Kelley. The Thierry statement was called to our attention, and an application was made for leave to amend the disbarment petition so as to include the transaction to which Thierry's statement related. Leave was granted and the petition was amended. At the hearing of the disbarment charges before the referee, Thierry repudiated some of the material portions of the oral statement, and denied any recollection of others. The result was that the charges were unsupported by the evidence, and the referee so reported.

At the hearing of the contempt charge, Thierry denied that his statement to the lawyers was intended by him to be used in the disbarment proceeding, and claimed that he did not know that it was to be so used, and that he did not know that the Colorado Bar Association had anything to do with it. The overwhelming weight of the evidence, however, is that he knew that it was to be so used, and that he made it for the very purpose of being so used. Indeed, in a statement written with pen and ink in his own handwriting, he said: "This statement of facts at the urgent request of *your association* is not actuated by animosity." In this statement, now before me, a light pencil line is drawn through the words *"your association,"* and above them is written with a pencil the

words, "Frances Eagan." At the hearing before the referee in the contempt proceeding, the attention of Thierry was called to this, and he was asked: "Which did you write? Read what you wrote." He answered: "I think that is what I wrote, 'This statement of facts at the urgent request of your association is not actuated by animosity.'"

That his statement to the lawyers was false, is the only conclusion that I can draw from the record. At the Kelley disbarment hearing, there was not a word of evidence tending to establish its truth, and Thierry expressly denied its truth in most important particulars; indeed, he said that when the statement was reduced to typewriting, he refused to sign it because "the major portion of it" was false. That the statement was accurately typewritten, there can be no reasonable doubt. It was taken in shorthand by an experienced court reporter and transcribed by him, and its accuracy was established by evidence that is convincing. Thierry did not say that it was transcribed inaccurately, but that the major portion of it was false. It seems beyond question that it was false, and that Thierry knew it to be so.

I cannot escape the conclusion that Thierry was guilty of contempt. The reasons for this conclusion are stated more fully in my concurring opinion in *People v. Thompson*, 91 Colo. 566, 17 P. (2d) 538, just decided. They need not be repeated here. The fact that the statement of Thierry was not sworn to does not relieve him from the charge of contempt. However, it tends to show that he acted with less deliberation than Thompson did, and justifies a lesser penalty than that imposed upon Thompson.

For the reasons stated above, I concur in the judgment.

Mr. Justice Hilliard, dissenting.

A full statement of my views on the law may be found in *People v. Thompson*, 91 Colo. 566, 17 P. (2d) 538. The respondent here, as there, was charged with contempt.

It grew out of the same disbarment proceeding, but upon a different charge or count. In the disbarment case the evidence did not sustain the charge. What I had to say as to the facts in the Thompson case is generally applicable here, but it should be added that Thierry is free from the embarrassment of having signed an affidavit, as Thompson was not. It does appear, however, from testimony given before the referee in the contempt hearing, that before the charges against the attorney were filed the respondent did make unsworn statements which may be construed to be at variance with his sworn testimony at the disbarment hearing. On such showing the referee finds, and the court solemnly adjudges, on the theory announced by the referee, "that this court has inherent power to punish criminal contempts committed in the immediate presence of the court," the respondent is guilty of criminal contempt. The referee does not find, nor could he, that the respondent gave false testimony in the disbarment hearing. And it was only there that he was sworn, and only there was he in the presence of the court. The revelations of the record do not justify a judgment of contempt against respondent.

Mr. Justice Butler, concurring specially, concedes that at most Thierry made only oral statements, not sworn, before a charge based thereon was filed against the attorney, but, he opines, the respondent should be committed for contempt, because, forsooth, the statement was made to a member of the grievance committee of the Colorado Bar Association, which, our brother says, is an "agency of this court for the purpose of investigating charges of unprofessional conduct against members of the bar." I deny that such or any committee was or is an agency of this court. On the contrary, I affirm that neither this nor any court can have an agency. The thought is repugnant to every conception of judicial functions. Judicial tribunals, if they are to make their proper contribution to the scheme of constitutional government, must not be subjected to the influence of agencies, of their creation

or otherwise. The judicial mind must be open from the first, and remain open until all in interest shall be heard. In this examination we are considering a problem that has to do with a man's liberty under the law, and to say that his rights are to be determined, not by what he said, but to whom he said it, cannot be justified. The logic is that if in a prosecution by this committee the evidence fails, the court must salve the feelings of the members by committing their witnesses for contempt. If through decree of this court these or any lawyers are to enjoy the unprecedented right indicated, then it is time the plain, hard working, never favored, members of the bar association should take charge of its affairs and conduct it along lines more in consonance with liberty and justice. If that may not be, then they should starve the association of funds and influence by withdrawing from membership.

Considering the nature of this proceeding, and its background, the general public might well note that out of a disbarment proceeding, heralded far and wide as evidencing the court's purpose to purify the bar, not a lawyer has been criticized, not a judge has been reversed, not a court of any degree has been made to see the error of its judgment; but a layman, poor and unheralded, who related a fanciful tale to a lawyer said to be a member of the grievance committee of the bar association, and in open hearing refused to swear to the slander, is to feel the displeasure of our judicial frown. Let those who enjoy this brand of justice wrap their robes around them. I weep for it.

I would not cheapen my view of the law on the principle presented, but I do insist, as in the Thompson proceeding, that considering the crying need of the hour the sum of which the judgment would deprive respondent, although reduced from $500 recommended by the referee, to $100, is still harsh and undeserved, and adds nothing to the court's dignity.

The respondent should be discharged.